Mrs. Virginia Young, Chairman Coordinating Board for Higher Education 600 Clark Avenue Jefferson City, Missouri 65101
Dear Mrs. Young:
This is in response to your request for an opinion on the question of whether the State Anatomical Board can properly retain exclusive custody and control of the funds it receives and disburses pursuant to Sections 194.120 through 194.180, RSMo 1969, thereby avoiding the established accounting, purchasing and revenue systems that apply to most state agencies.
The State Anatomical Board is comprised of "heads of departments of anatomy, professors and associate professors of anatomy" at Missouri educational institutions in which human anatomy is investigated or taught, and the principal function of the board is to distribute dead human bodies to the participating educational institutions. Section 194.120, RSMo 1969. Section194.130(2) authorizes the board to adopt its own bylaws, select its own officials and agents and determine their compensation. The funds received and disbursed by the board are described as follows:
 "Each educational institution accepting the provisions of sections 194.120 to 194.180 shall remit to the board a sum to be fixed and determined by the board; said sum shall be in proportion to the total number of students in attendance at said educational institutions as set forth in the affidavit provided for in section 194.140, or so much per capita for each of said students within sixty days after the beginning of each term. The funds so received shall be used in providing for the expense incurred in the conduct of the affairs of the board, and the board shall have the exclusive custody and control of such funds and their disbursements."
Section 194.130(3), RSMo 1969. (Emphasis added)
You state in your opinion request that the General Assembly makes no appropriation for the operation of the State Anatomical Board and that the board maintains a private bank account for the deposit and disbursement of funds it controls pursuant to Section 194.130(3). You also state that the latest audit of the Department of Higher Education contains the following comment:
 "`This practice circumvents the state accounting, purchasing, and revenue systems and also apparently violates Section 30.240, RSMo, which states, the state treasurer shall hold all state monies, all deposits thereof, time as well as demand, and all obligations of the United States government in which such monies are placed for the benefit of the respective funds to which they belong and disburse the same as authorized by law.'"
In addition to Section 30.240 to which the auditor has referred, Article IV, Section 15 of the Missouri Constitution requires all state funds to be deposited in the state treasury. Furthermore, Section 33.080, RSMo 1969, requires public officials to deposit in the state treasury any monies received pursuant to law:
 "All fees, funds and moneys from whatsoever source received by any department, board, bureau, commission, institution, official or agency of the state government by virtue of any law or rule or regulation made in accordance with any law, shall, by the official authorized to receive same, and at stated intervals of not more than thirty days, be placed in the state treasury to the credit of the particular purpose or fund for which collected, and shall be subject to appropriation by the general assembly for the particular purpose or fund for which collected during the biennium in which collected and appropriated."
The foregoing constitutional and statutory provisions require the deposit of state funds in the state treasury, under the control of the state treasurer, and subject to legislative appropriation. These provisions appear to conflict, therefore, with Section 194.130, which purports to authorize the State Anatomical Board to retain "exclusive custody and control" of the funds it receives and disburses. We need not resolve this conflict, however, because an entirely different question is presented when we consider the effect of the Omnibus State Reorganization Act of 1974, Appendix B, RSMo Supp. 1975.
Section 6.6 of that act transfers the State Anatomical Board to the Department of Higher Education by a type II transfer. A type II transfer is defined as follows:
 "(b) Under this act a type II transfer is the transfer of a department, division, agency, board, commission, unit, or program to the new department in its entirety with all the powers, duties, functions, records, personnel, property, matters pending, and all other pertinent vestiges retained by the department, division, agency, board, commission, unit or program transferred subject to supervision by the director of the department. Supervision by the director of the department under a type II transfer shall include, but shall be limited to: budgeting and reporting under subdivisions (4) and (5) of subsection 6 of this section; to abolishment of positions, other than division, agency, unit or program heads specified by statute; to the employment and discharge of division directors; to the employment and discharge of employees, except as otherwise provided in this act; to allocation and reallocation of duties, functions and personnel; and to supervision of equipment utilization, space utilization, procurement of supplies and services to promote economic and efficient administration and operation of the department and of each agency within the department. Supervision by the director of the department under a type II transfer shall not extend to substantive matters relative to policies, regulative functions or appeals from decisions of the transferred department, division, agency, board, commission, unit or program, unless specifically provided by law. The method of appointment under type II transfer will remain unchanged unless specifically altered by this act or later acts." Reorganization Act, Section 1.7(1(b)).
Accordingly, all the "powers, duties, functions, records, personnel, property, matters pending, and all other pertinent vestiges" of the State Anatomical Board are transferred and subject to the supervision of the Director of the Department of Higher Education, i.e., the Commissioner of Higher Education. (See Sections 1.6 (3) and 6.2 of the Reorganization Act.)
Pursuant to the definition of a type II transfer, the supervision of the commissioner of higher education includes the budgeting and reporting responsibilities provided in Sections 1.6 (4) and 1.6(5) of the Reorganization Act. Section 1.6(4) vests in the head of the department of higher education, i.e., the Coordinating Board of Education (see Section 6.2, Reorganization Act), the exclusive budget making powers for any "board" within the Department of Higher Education, which now includes the State Anatomical Board. The State Anatomical Board, therefore, must annually "present its estimates of requirements" to the Coordinating Board for review, modification, consolidation and ultimately submission to the General Assembly in conjunction with appropriation requests for the Department of Higher Education.
To give effect to this type II transfer will sharply curtail the autonomy that the Anatomical Board has enjoyed since its inception; essentially, we must determine whether Section 6.6 of the Reorganization Act can be construed as repealing by implication that part of Section 194.130 (3) which purported to authorize the Anatomical Board to retain exclusive custody and control of the funds received from educational institutions and disbursements made by the Anatomical Board. Although repeals by implication are not favored, Graves v. Little Tarkio DrainageDist. No. 1, 134 S.W.2d 70 (Mo. 1939), we have no alternative but to conclude that the legislature, by providing for a type II transfer, intended to subject the fiscal operations of the Anatomical Board to the supervision of one of the executive departments of state government.
The stated purpose of the Reorganization Act is to improve accountability and to provide for the most efficient and economical operations possible in the administration of the executive department of state government. Subjecting the operations of the State Anatomical Board to the supervision of the Department of Higher Education and ultimately to the scrutiny of the legislature through the appropriations process can be said to further the objectives of the Reorganization Act. It should be noted, however, that the primary consequence of the type II transfer relates to fiscal matters, employment, equipment and space utilization, and the procurement of supplies and services; pursuant to a type II transfer, the supervision by the Department of Higher Education "shall not extend to substantive matters relative to policies [or] regulative functions . . ." (see Section 1.7(1(b)).
CONCLUSION
It is the opinion of this office that monies received by the State Anatomical Board are to be deposited in the state treasury. Expenditures are to be made by such board from appropriations by the General Assembly.
Very truly yours,
 JOHN ASHCROFT Attorney General